Baker v. Baker.

---

## Charles Hinkley Baker v. Howard W. Baker, Administrator, et al.

### Gen. No. 13,640.

1. CONTRACTS—*how to be construed.* A contract must, if possible, be so construed as to effectuate the intention of the parties and to sustain the contract; also, if one possible construction would render the contract illegal and another possible construction would make it legal, the latter construction will be adopted.

2. CONTRACTS—*when party not deemed to have contracted with himself.* A party to a contract will not be deemed to have undertaken to perform the impossible feat of contracting with himself, but a construction will be given, if consistent with the contract as an entirety, which will make the undertaking or clause in question an agreement by such party with the other signers of the contract.

3. CONTRACTS—*when want of mutuality does not appear.* *Held,* that the contract in question in this case was not void for want of mutuality.

4. CONTRACTS—*when party cannot question validity.* A party cannot at one and the same time assert rights under a contract and urge that the same is void.

5. CONTRACTS—*effect of clause limiting time for bringing suit.* A clause of a contract which provides that an action with respect to a portion of the subject-matter thereof shall be commenced within a time specified, and that the commencement of such action within such specified time is a condition precedent to its maintenance, is valid and enforceable.

6. AMENDMENTS AND JEOFAILS—*when error to deny leave to amend bill of complaint.* *Held,* that under the showing made in this case it was error to deny leave to amend the bill of complaint filed therein.

HOLDOM, P. J., dissenting.

Bill in chancery. Appeal from the Superior Court of Cook County; the Hon. WILLARD M. MCEWEN, Judge, presiding. Heard in this court at the March term, 1907. Reversed and remanded. Opinion filed March 9, 1908. Rehearing denied March 26, 1908.

**Statement by the Court.** This is an appeal from a decree sustaining a demurrer to and dismissing a bill filed by appellant against appellees. Appellant will be referred to as complainant, and appellees as defendants. The bill in question is the second amended bill filed in the cause, and will be referred to as the bill. The bill is very lengthy, and instead of being abstracted is substantially set forth in full in what is misnamed "Abstract of Record," but which is, in fact, a printed copy of the record. Counsel have completely ignored the rule of the court requiring abstracts. It is averred in the bill substantially as follows:

Howard W. Baker is the duly appointed administrator of William T. Baker, deceased, who died at Chicago, October 6, 1903, leaving as his heirs Charles H. Baker, the complainant, Henry D. Baker, Bertha Baker Alling, formerly Bertha Baker, Anna F. Baker, wife of said William T. Baker, deceased, and Anna M. Baker, all of whom are defendants, and each of the last two *non compos mentis.* Complainant is the son of William T. Baker, deceased, and is,

Baker v. Baker.

by education and profession, a civil engineer, and educated in respect to mechanical, hydraulic and electrical engineering, which William T. Baker, deceased, knew, and so knowing, confided in complainant as a son and an expert. William T. Baker in 1897 was not scientific or an expert in matters involving electricity, but was a financier, a business man and a stock broker. Five years prior to 1897 complainant discovered in Kings county, in the State of Washington, Snoqualmie Falls, a water power capable of generating electric agencies for use in conveying power for lighting, heating, and transportation through much of the territory of the then Territory of Washington, and the territory adjacent thereto, and, after investigation and the devisement of plans for the utilization of said Falls, complainant secured an option for the purchase of the same, and came to Chicago and presented to William T. Baker, deceased, a complete plan for the development thereof, and showed how profit could be made by investing therein; and this was approved by said William T. Baker; and, about the year 1894 and 1895 he and complainant, at Chicago, entered into a verbal copartnership agreement for the purpose of developing and distributing said water power. The partnership agreement is then stated, and is in substance, that complainant was to furnish his skill and labor and devote all his time to the business, and that William T. Baker was to furnish all the necessary money, and that all profits and losses were to be shared equally; and also that the partnership should extend to and include the organization of any company or offspring companies which it might be necessary to form to carry out said project, and that the business should be conducted in the name of William T. Baker, except when it was necessary to be conducted in the names of such companies as might be formed. Complainant performed his part of said agreement, and, in addition, contributed sums of money toward the enterprise to the amount approximately of $14,000.

In pursuance of said partnership business, complainant acquired the plant, machinery and real and personal prop-

erty in the name of William T. Baker, or in the names of such companies as might be organized for the purpose of furthering the object of the copartnership, the stock and bonds of which companies were, at complainant's request, made out in William T. Baker's name, but were to be held by him in trust for himself and complainant. Complainant proceeded to obtain permits, deeds and titles of such other water plants, rivers and falls in the State of Washington as would make one common system, for the purpose aforesaid, the said William T. Baker furnishing the necessary money. A number of corporations were formed in pursuance of the partnership agreement, the stock of which was taken and held in William T. Baker's name for the joint benefit of the partners. The first of said corporations was the Snoqualmie Falls Power Co., organized under the laws of the State of Washington, January 18, 1898, the capital stock of which was $500,000, all of which, except not exceeding four shares held by others for the purpose of the directorate, was in the name of William T. Baker, and was held and apparently owned by him. Complainant, by William T. Baker's direction, was made president and general manager of said company, and complainant expended $25,000 in the construction of implements and materials and erected a ten thousand power plant at said falls, and expended $750,000 in the erection of necessary buildings, which sum was paid from copartnership funds, and said William T. Baker assigned all of said properties for $500,000 par value of the stock of said company, and $600,000 par value of first mortgage bonds of said company. Also there was created by complainant and William T. Baker the Seattle Cataract Co., for the purpose of purchasing power from the Snoqualmie Falls Power Co., and distributing the same to the people of Seattle, and the Seattle Co. took title in its own name to a building known as the Cataract Building, in the city of Seattle, and complainant, at great trouble and in competition with others, procured from the city of Seattle a "franchise" allowing the Snoqualmie Falls Power Co. and its subsidiary companies to furnish power through that city

in divers forms and ways, which franchise was secured and confirmed to William T. Baker. Also there was purchased for the sum of $35,000, all the interest of the White River Company, the capital stock of which was $1,500,000, for the purpose of utilizing the White River power, in Pierce county, State of Washington. Also the Tacoma Cataract Co. was organized under the laws of the State of Washingtong, with a capital stock of $100,000, said company to act in conjunction with the White River Falls Co., and operate, as did the Seattle Cataract Co., with the Snoqualmie Falls Power Co.

Subsequently, October 22, 1902, complainant, with the knowledge, consent and direction of William T. Baker, did, for the better control and management of said companies, direct the consolidation of all of said companies under the name of Snoqualmie Falls & White River Power Co., with a capital stock of $3,000,000, complainant being one of the incorporators of the consolidated company, and the consolidated company acquired, March 1, 1904, the properties heretofore named. Next, it is stated that large amounts, stating the amounts, were expended by the White River Power Co. and the Tacoma Cataract Co., in constructions and in the erection of buildings. Subsequently, the consolidated company, because of the increase in value of its property, owing to complainant's labors, had its capital stock increased to $3,500,000, divided into 12,500 shares of preferred stock bearing 6 per cent interest, and 22,500 shares of common stock.

William T. Baker, while holding all the partnership assets in his own name in trust, as aforesaid, drew, from time to time, large amounts of money, greatly in excess of his investment, and, as complainant charges, of all amounts contributed by him. In the spring of 1903, complainant requested William T. Baker, as he had at other times before, to make distribution of stock, in accordance with the intent of the partnership, but he, being at that time, oppressed by matters pertaining to the debts of, and bond issues on the property, and pertaining to his operations on

the Board of Trade of the city of Chicago, said that division would be made at an early time, and complainant, relying on his integrity and business reputation, etc., refrained from insisting on a division, and shortly thereafter, October 6, 1903, William T. Baker suddenly died, without any accounting having been made with complainant, and immediately thereafter, and following the appointment of Howard W. Baker as the administrator of William T. Baker's estate, said Howard W. Baker took possession of all the assets of said partnership business, and has since refused to permit complainant, as surviving partner, to wind up the business of the partnership, and has ever since refused to recognize complainant's claim, as partner, for an accounting in respect to the partnership assets in his hands, and complainant served on said administrator a statement of his claim as partner, and, October 15, 1904, filed in the Probate Court a sworn statement, setting forth his right and interest as partner. Thereafter, it became necessary to obtain money for the benefit of the estate, and to make certain financial arrangements with N. W. Harris & Co., to finance the estate and the properties in which complainant had a half interest as partner; and complainant's claim, filed as aforesaid, was deemed an obstruction to obtaining the money by Harris & Co., by the administrator and the heirs; and all parties, particularly Howard W. Baker, administrator, Charles H. Baker, complainant, Bertha C. B. Alling, Henry D. Baker, Howard W. Baker, in his own right, and also as conservator and guardian of Anna F. Baker and Annie M. Baker, concluded that it would be well, for the considerations of advantage to the estate and the properties, to withdraw the written notice of complainant's claim; all of which agreement was reduced to writing in a certain paper known as "Assignment in Trust," designated "Exhibit A" to the bill, together with an auxiliary contract with N. W. Harris & Co.

From time to time during the year 1905, propositions of settlement were made to complainant by said administrator and the heirs, which did not, after negotiations, prove ma-

terially satisfactory, and November 6, 1905, complainant commenced suit in the United States Circuit Court for the Northern District of Illinois, and, by reason of said trust agreement, was compelled to make parties to said suit, the Commercial Trust Co. of New Jersey and other defendants, some of whom reside in the State of Washington. The Commercial Trust Co. appeared and objected to the jurisdiction, and Howard W. Baker, for himself and his codefendants, objected that the defendants residing in the State of Washington were not within the jurisdiction of the court, and on the suggestion of the presiding judge, that full relief could not be had against all the parties in that court, the bill was dismissed April 20, 1906, without prejudice, on complainant's motion. Said trust agreement provides that complainant should commence suit within a year or be barred, and complainant claims that, by said suit in the United States Court, he so did. It is provided in the trust agreement that the trustee shall keep correct books of account of the trust property, at all times during the trust, and furnish to the distributees, at their request, statements showing the condition of said property, which Howard W. Baker has failed to do, although complainant, as a distributee, has frequently requested from him a written statement showing the true condition of said property.

Section 10 of said trust agreement provides that so far as practicable, the trust property and funds, at any time held by the trustee, shall be deposited in safe deposit vaults or banks in Chicago, and that books of account shall be kept by the trustee in his office in Chicago, and shall be subject, at all times, to examination by the distributees. But the trustee, in violation of said agreement, has sent the trust property out of this State and kept it in the State of New Jersey, and under the control of himself and the said Commercial Trust Co., so that complainant can obtain no information concerning the same.

William T. Baker, at divers times, received from the partnership business items aggregating $1,227,173.08, as complainant believes, leaving at least $149,441.33 to be divided

between complainant and the estate of William T. Baker. The bill then sets out properties claimed to exceed in value all investments made by William T. Baker in which complainant claims an interest.

The remaining allegations of the bill we do not deem necessary to be set forth for the purpose of passing on the question to be decided.

JAMES HAMILTON LEWIS and ELIJAH N. ZOLINE, for appellant.

CUSTER, GRIFFIN & CAMERON, for appellees; J. R. CUSTER, of counsel,

MR. JUSTICE ADAMS delivered the opinion of the court.

The special cause of demurrer to the bill is that suit was not commenced by complainant within one year from November 7, 1904, the date of the trust agreement mentioned in the preceding statement, and counsel for the parties, respectively, apparently agree that the court sustained the demurrer and dismissed the bill on the ground that the present suit, which was commenced March 16, 1906, is barred by the following provision in section 6 of the trust agreement, to which the complainant was a party: "Nothing in these presents shall be deemed or taken to prejudice or affect the right of said Charles H. Baker, at any time within one year after the date of these presents, to commence, and thereupon to prosecute to final judgment or decree such action at law, or suit in equity, as he may elect, for the purpose of establishing the validity of his claim of the existence of a partnership between himself and said William T. Baker, deceased, in his lifetime, and for the recovery only out of so much of said property as is not and shall not be required to be applied hereunder by the trustee, or his successor, in his, her or its discretion, to the uses and purposes expressed in the foregoing clauses a, b and c of paragraph 1 of these presents, of such alleged partnership interest or share of said Charles H. Baker, and out of no other property; and

the said Charles H. Baker does, hereby, further covenant and agree, that it shall be and is a condition precedent to the maintenance of such suit or action, that the same shall be commenced within one year after the date hereof, or thereafter be forever barred."

Appellant's counsel contend that the trust agreement is void for want of contracting parties, want of mutuality and want of consideration. Waiving for the present the question, whether appellant is in a position to question the validity of the trust agreement, we will consider this objection. The agreement commences thus:

"This indenture, made and entered into this 7th day of November, A. D. 1904, by and between Henry D. Baker, party of the first part, Howard W. Baker, party of the second part (hereinafter also called the 'Trustee'), and Charles H. Baker, Bertha C. B. Alling, Henry D. Baker and Howard W. Baker, in his own right, and as conservator and guardian of Anna F. Baker and Annie M. Baker, duly appointed by the Probate Court of the County of Cook, in the State of Illinois, and the Superior Court of the County of King, in the State of Washington, parties of the third part (hereinafter also called the 'Distributors', Witnesseth:"

The conclusion of the agreement, and the signatures thereto, are as follows:

"14. The distributees do hereby jointly and severally agree to and with the parties of the first and second parts to be bound by, all and singular, the terms and provisions of these presents, the said Howard W. Baker as conservator and guardian of the said Anna F. Baker and Annie M. Baker, pursuant to authority conferred upon him by orders duly entered by the Probate Court aforesaid in the matters of their respective estates.

"15. The party of the second part does hereby accept the trusts created and in him reposed by these presents, and does, for himself, his successors, heirs, executors and administrators, hereby covenant and agree to and with the party of the first part and the parties of the third part, their and each of their successors, heirs, executors, administrators and

assigns, that he, the party of the second part, will well, truly and faithfully execute the same according to the best of his skill, knowledge and ability.

"In witness whereof, the parties to these presents have hereunto, and to five other instruments of like tenor, set their hands and seals, the day and year first above written.

HENRY D. BAKER,      [SEAL]
HOWARD W. BAKER,    [SEAL]

CHAS. H. BAKER,                     [SEAL]  ⎫
   By James Hamilton Lewis,                      ⎪
     His Agent and Attorney in fact.               ⎪
HOWARD W. BAKER,          [SEAL]              ⎪
HENRY D. BAKER,              [SEAL]              ⎬ Distributees.
BERTHA C. B. ALLING,        [SEAL]              ⎪
HOWARD W. BAKER,          [SEAL]              ⎪
   As Conservator and Guardian of             ⎪
    Anna F. Baker.                                     ⎪
HOWARD W. BAKER,          [SEAL]              ⎪
   As Conservator and Guardian of             ⎭
    Annie M. Baker."

The argument in respect to want of parties is, that Howard W. Baker, by paragraph 14 *supra,* purports to contract with the parties of the second part, he being one of said second parties, and as one cannot contract with himself, the agreement is void. We think that counsel, unmindful of the maxim *qui haeret in litera haeret in cortice,* take too short a view. The parties to the agreement well knew, at the time of its execution, that one cannot contract with himself. This is shown by paragraph 6 of the agreement, in which the appellant contracts as follows: "Charles H. Baker does hereby covenant and agree to and with the party of the first part, the party of the second part, and the parties of the third part (other than Charles H. Baker), and each of them," etc. The parties must be presumed to have intended that every part of the agreement should be effective and operative, and could not have understood or intended paragraph 14 as requiring Howard W. Baker to perform the impossible feat of contracting with himself. They must have understood by the paragraph that he was contracting

Baker v. Baker.

with parties other than himself. It is a fundamental rule that a contract must, if possible, be so construed as to effectuate the intention of the parties and to sustain the contract, *ut res magis valeat quam pereat*. It is also a rule of construction that if by one possible construction the contract would be illegal, and if by another possible construction it would be legal, the latter construction will be adopted. Chitty on Contracts, 11th Am. ed., 977; 2 Parsons on Contracts, 6th ed., star p. 500. *A fortiori*, if construing paragraph 14 one way involves an impossibility, and if construing it another way, of which it is susceptible, it is in accordance with common sense and the general intention of the instrument, the latter construction must prevail.

In respect to the objection that the agreement is void for want of mutuality, counsel say, citing cases, that Howard W. Baker, who, as distributee, signed the agreement, as conservator and guardian of Anna F. Baker and Annie M. Baker, insane persons, cannot bind the persons or estates of his wards. Counsel fail to point out anything in the agreement by which it is sought to bind the person or estate of either of the wards, and, on examination of the agreement, we cannot find anything. The only provision in the agreement specifically referring to the wards, is one providing that the trustee shall pay to them such proportion or shares of the estate as they will, by law, be entitled to take. There is nothing in the agreement imposing any obligation on them, or requiring them to do anything. Therefore, there is nothing to be enforced against them.

The argument of complainant's counsel must proceed on the ground that Anna F. Baker and Annie M. Baker are necessary parties to the agreement. If this be true, the sole way in which they could become parties is by their conservator and guardian, who, by section 5, chapter 85 of the statutes, has the care and management of their estates, signing on their behalf, and we know of no decision holding that the conservator of an insane person cannot consent, on behalf of his ward, to an agreement for the benefit of the ward, and which binds neither the person nor the estate of

the ward.  If the wards are unnecessary parties, and Howard W. Baker was without authority to sign the agreement on their behalf, his so signing did not make them parties, and the agreement can be enforced against the other parties to it.  Lancaster v. Roberts, 144 Ill., 213.

We find no want of mutuality in the agreement.  The agreement was made for the mutual benefit of the heirs, including the complainant, and ample consideration for it is shown in the agreement itself.  It is recited in the agreement as follows:

"Whereas, it is the desire of the party of the first part, and for the benefit of each and all of the distributees, that the party of the first part should assign and deliver the property next hereinafter described, to the Trustee, to be held, managed, controlled, disposed of, applied and distributed in the manner herein provided."

The complainant then proceeds to assign and transfer certain properties to the trustee.  We do not think complainant is in a position to attack the trust agreement.  He does not, in his bill, claim that the agreement is void; but, on the contrary, pleads it and claims rights under and by virtue of it.  It is contended by complainant's counsel that the present suit is not barred by the limitation in paragraph 6 of the trust agreement, above quoted; that such was not the intention of the parties, and, also, that the commencement of the suit in the United States Circuit Court was a compliance with the limitation.

The date of the agreement is November 7, 1904.  It is averred in the bill that the suit in the United States Court was commenced November 6, 1905, the last day but one of the time limited.  The present suit was commenced March 15, 1906.  The intention of the parties is to be ascertained from the words of the instrument.  In and by paragraph 6 of the trust agreement appellant covenants as follows: "And the said Charles H. Baker does hereby further covenant and agree that it shall be, and is, a condition precedent to the maintenance of such suit or action, that

Baker v. Baker.

the same shall be commenced within one year after the date hereof, or thereafter be barred," etc. This language excludes, as we think, all doubt of the intention of the parties. It will be observed that the "condition precedent" is not merely to the commencement of suit within a year, but is a condition precedent to the *maintenance* of such suit or action, that the same shall be "commenced within one year after the date hereof." The bill does not inform us of the nature or contents of the bill filed in the United States court, but merely that it was against the defendants, and that complainant, on learning that, by reason of complainant being a·resident of the State of Washington and the legal residence of the Commercial Trust Company being in New Jersey, no relief could be granted against the New Jersey company, for want of jurisdiction of the court, dismissed the bill. In other words, complainant dismissed that bill because it could not be maintained in that court against a necessary party. Riddlesbarger v. Hartford Insurance Company, 7 Wall., 386, was a suit against the insurance company on a policy, which contained this clause:

"That no suit or action of any kind against said company for the recovery of any claim upon, under, or by virtue of the said policy shall be sustainable in any court of law or chancery, unless such suit or action shall be commenced within the term of twelve months next after the loss or damage shall occur, and in case any suit or action shall be commenced against said company after the expiration of twelve months next after such loss or damage shall have occurred, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim thereby so attempted to be enforced."

The policy was dated June 1, 1861, and was for one year. The loss occurred in March, 1862, and in June, 1862, the plaintiff commenced suit in the Kansas City Court of Common Pleas. The suit was dismissed by the plaintiff in June, 1864, and, within one year thereafter the plaintiff commenced suit in the Court of Common Pleas

in St. Louis county, Missouri, and the suit was transferred
from that court to the United States Court for the District
of Missouri. The defendant pleaded the limitation above
quoted, and the plaintiff replied the commencement of the
suit in the Kansas City Court of Common Pleas. The
defendant demurred to the replication, and the court, Mr.
Justice Fields delivering the opinion, say: "The action
mentioned, which must be commenced within the twelve
months, is the one which is prosecuted to judgment. The
failure of a previous action from any cause cannot alter the
case. The contract declares that an action shall not be
sustained, unless *such* action, not some previous action, shall
be commenced within the period designated. It makes no
provision for any exception in the event of the failure of
an action commenced, and the court cannot insert one with-
out changing the contract." The court concludes its opinion
in these words: "The commencement, therefore, of the
present action within the period designated, was a condi-
tion essential to the plaintiff's recovery, and this condition
was not affected by the fact that the action, which was dis-
missed, had been commenced within that period."

In Arthur v. Homestead Fire Ins. Co., 78 N. Y., 462,
the policy contained this condition: "No suit or action
against this company, for the recovery of any claim under
or by virtue of this policy, shall be sustained in any court
of law or equity, unless commenced within the term of one
year next after any claim shall accrue," etc. The loss oc-
curred March 8, 1876, and, by the terms of the policy, the
plaintiff's claim accrued July 8, 1876. The plaintiff com-
menced a suit in August, 1876, but was non-suited on mo-
tion of the defendant, and the suit, from judgment in
which the appeal was taken, was commenced October 12,
1877, more than a year after the plaintiff's claim accrued.
The court say: "That the plaintiff's counsel failed to pro-
ceed in that action, and paying costs thereof abandoned it,
cannot tend to the advantage of the plaintiff or confer a
new right against his adversary. As the commencement of
that action does not bring the present within the limita-

Baker v. Baker.

tion, neither does its failure extend the time. (Riddles-barger v. Hartford Ins. Co., 7 Wall., 386.) The cases cited by the learned counsel for the respondent are abundant to show that waiver may be implied from slight circumstances, but none afford any support to the position that a successful defense of one action estops a party from insisting that a second cannot be maintained because commenced too late."

We are of opinion that the limitation in paragraph 6 of the trust agreement constitutes a bar to the present suit, and that the commencement of the suit in the United States Court, which was subsequently dismissed by the complainant, was not a compliance with the limitation. This is said without reference to the question whether complainant was, or not, induced by the appellees to refrain from bringing suit within the period limited. While it is averred in the bill that there were negotiations between complainant and some of the defendants, looking to a settlement of his claim, and that, trusting to the same, he refrained from bringing suit till November 6, 1905, it is not averred that he was induced to so refrain by any acts or words of the defendants or any of them. On the contrary, the averments of the bill indicate that complainant was as anxious for a settlement as were the defendants. The bill avers that complainant made propositions which the defendants regarded inequitable, and they made propositions which he regarded inequitable, and that no satisfactory conclusion could be reached. When the court sustained the demurrer to the bill the complainant moved for leave to amend the bill, which motion the court denied.

The bill is not verified by affidavit. The motion to amend was in writing, and is called a petition, and is signed by the solicitors for the complainant. It is averred in the written motion or petition that the matters set forth in the proposed amendments were unavoidably and unintentionally omitted from the bill, because of the sickness of Mr. E. N. Zoline, one of the counsel in the cause, who was charged with the duty of drafting the bill and had full charge of

the pleadings. The petition is verified by the affidavit of the complainant, who deposes that it is true in substance and in fact. Then follow the proposed amendments, of which we do not deem it necessary to here consider any except such as are intended to account for delay in bringing this suit, which are, in substance, as follows: The defendants, except N. W. Harris & Co. and the Commercial Trust Co., and particularly Howard W. Baker, Henry D. Baker and Bertha Baker Alling, separately and jointly, made various propositions of settlement to complainant during January, February, March, April and May, 1905, and continuously thereafter, and asked him not to bring this suit, and held out to him, as a reason therefor, that his bringing suit would injure the estate and embarrass the heirs and hurt their financial interests and injure the prospects of obtaining money in Chicago and conducting financial arrangements with N. W. Harris & Co., etc. And said defendants, except those *non compos mentis,* frequently and repeatedly offered reasons to complainant why suit by him to establish his copartnership interest should not be brought, and that the income of the estate would be materially depreciated if he brought suit, and promised complainant that terms of adjustment satisfactory to him would be arrived at, and prevailed on him to defer bringing suit, and induced him to continue further negotiation. Other averments to the same effect are contained in the proposed amendments, including requests of some of the defendants to complainant, not to bring suit. Affidavits of Elijah N. Zoline and Francis S. Wilson were read in support of the motion, to the effect that the drafting of the pleadings was, by agreement of complainant's counsel, left to Mr. Zoline, and that he had sole charge thereof after his employment in the cause, and that Zoline, June 16, 1906, became suddenly ill of typhoid fever, and June 21, 1906, was taken to the Presbyterian Hospital, where he remained till July 8, 1906, and that he had in his possession certain papers necessary to prepare the second amended bill, which is the bill in question, and that, for the reasons stated, the amendments proposed were omitted from

Baker v. Baker.

the bill. Mr. Custer, solicitor for the defendants, made an affidavit in opposition to the motion, to the effect that all necessary information for the purpose of inserting the proposed amendments in the bill, was in the possession of Mr. Lewis, solicitor for complainant, in ample time to have inserted the same in the bill.

By section 37 of the Chancery Act, it is provided that the court "may permit the parties to amend their bills * * * on such terms as the court may deem proper, so that neither party be surprised nor unreasonably delayed thereby." In the affidavit in opposition to the motion it is not stated that the defendants were surprised, or would be delayed, by allowance of the amendments, and, in the present state of the proceedings, it is not apparent that they would be unreasonably delayed.

In Droullard v. Baxter, 1 Scam., 191, the court held "that a complainant has a right, considered unquestionable, to amend his bill before answer filed."

In Craig v. The People ex rel., 47 Ill., 487, an amendment, before answer, was allowed to a bill for an injunction, and this was assigned as error, in respect to which the court say: "As to the propriety of allowing the amendment, nothing can be clearer, and it is the constant practice of courts of chancery to allow amendments, certainly before answer filed, and in many cases after and before replication is filed." *Ib.*, 492.

In Thomas v. Coultas, 76 Ill., 493, 496, it is said that sworn bills are always allowed to be amended, to prevent a failure of justice, when a proper case is shown.

Bauer Grocer Co. v. Zelle, 172 Ill., 407, 412, is to the same effect.

In Nelson v. Randolph, 222 Ill., 531, the lower court refused leave to file certain proposed amendments to a sworn bill. The court held that a proper showing had been made for the allowance of the amendment, and used this language: "If the allowance of the amendments would have made the bill one under which the appellants could have obtained the relief sought, or any equitable relief, the court

should have allowed the amendments in furtherance of justice, and its refusal to do so is an abuse of discretion, which may be reviewed on appeal." The bill in this case is not sworn to, and the allowance of amendments to an unsworn bill is, as a general rule, a matter of course. It is averred in the bill that complainant and William T. Baker, deceased, were equal partners in the business described in the bill, and that the assets of the partnership are large and very valuable, and we think justice requires that the amendments shall be allowed, so as to enable the complainant to prove, if he can, that he was induced by the defendants to delay bringing the present suit within the time limited by the trust agreement. Whether he was so delayed will, of course, be for the chancellor to decide from the evidence.

The decree will be reversed and the cause remanded with direction to permit the proposed amendments to be made, the appellant not to recover his costs of this court.

*Reversed and remanded with direction.*

MR. PRESIDING JUSTICE HOLDOM, dissenting. While I unhesitatingly agree with all that has been so well said in the majority opinion of the court, I am unable to bring my mind into accord with its final conclusion. To remand the cause for the purpose of allowing complainant to file the amendments which the chancellor denied him permission to do, seems to me a work of supererogation. These amendments are in the record and were before the chancellor. We ought to assume, at least, that the chancellor had informed himself of the purport and extent of these amendments, and that with full knowledge of their legal effect as injecting new matter into the amended bill, he held them to be obnoxious to the demurrer interposed, and to have concluded, as a matter of law, that with the proposed amendment the bill, if permitted to be so amended, would not state a case entitling complainant to any of the relief prayed. In my judgment, this court should, in deciding this case, do as the chancellor should be regarded as having done, viz.: consider the proposed amendments in concluding whether or not a

Baker v. Baker.

case has been stated which, with such proposed amendments, entitled complainant to any of the relief prayed.

It would seem that complainant has not, by the proposed amendment, excused his delay or stated such facts as, when considered with the matters already appearing from the bill before the court, relieve him from the full operation of the limitation clause in the trust agreement. It is plainly apparent that, aside from the trust agreement, complainant has neither legal claim nor standing in any court to enforce one.

If complainant was in fact, as alleged in the bill, a partner of his deceased father in the enterprises, why did he not make that fact known at the time of the grant of letters of administration and take the course sanctioned by the statute? This opportunity to assert his rights he allowed to pass without availing of it, but elected to assert his rights in the form of a money claim against his father's estate. He filed his claim, but failed to support it by proof and allowed it to be dismissed. By the latter act, the time in which he could assert any claim, however meritorious it might be, had passed. He was without remedy. If any right to assert a claim of the nature made apparent by his bill and amendments remains to him, it is in virtue of the trust agreement. The limitation allowed by that writing for the assertion of such right had concededly passed at the time of the filing of the original bill in this record. The filing of a bill in the United States Court on the last day of the limitation became abortive when it was discovered that complainant had appealed to a tribunal which was without jurisdiction to hear and determine the matters between the parties to it, and which bill was afterwards dismissed on complainant's own motion; and this court holds in the majority opinion that the commencement of that suit was not a compliance with the limitation clause of the trust agreement. The only matter left on remand for the court, below to determine, is whether complainant has stated such facts in regard to the conduct of some of the defendants in inducing him to refrain from instituting his action, that the

limitation may be treated as waived. If the commencement of the suit in the Federal Court was not a compliance with the limitation clause of the agreement, it being in the record, is it not evidence from which other facts may be deduced? Is it not indubitable if not conclusive evidence, that complainant did not rely upon any waiver of the limitation of defendants, that he was not lulled into repose by any of their representations, and that he was taking no chances and did not regard the negotiations as any waiver of the limitation?

The fact of the suit being commenced refutes, to my mind, completely the claim that complainant was misled by any representations which were made to him by any of the defendants. The claim of waiver of the limitation is so patent a pretense in an attempt to cover up and avoid the mistake of complainant in presenting his cause to the wrong court, that no one could be deceived thereby. When the legal error was discovered, this suit was instituted. What for? To take the place of the suit started in vain in the Federal Court. Complainant was not lulled into repose when he commenced the Federal Court suit. He was wide awake, trusting to no one. His conduct is in conflict with his pretenses. The proposed amendments state no facts from which defendants can be held to be estopped from asserting the limitation as a bar to this action. Such amendments do not contain any representations of defendants, in faith of which complainant acted, which would operate as an estoppel to invoke the limitation clause as a defense in bar of this action. Schmitt v. Merriman, 101 Ill. App., 450; Mills v. Graves, 38 Ill., 465.

As already stated, complainant has no enforceable rights, except by force of the terms of the trust agreement. If that agreement is binding at all, it is binding as a whole, including the limitation clause. If that has been waived, the agreement must be construed with the limitation clause expunged. This is the reasoning and the law as pronounced in Lynchberg Cotton Mills Co. v. Travelers' Ins. Co., 149 Fed. R., 958. If this doctrine is applied here, then com-

plainant, being barred of any right to maintain an action by the statutes of this State, is as much without remedy as he would be had the trust agreement not been made.

In my judgment the case stated by complainant, including the rejected amendments, does not state a cause of action against defendants which is invulnerable against a demurrer, and it follows that, so believing, I am unable to reach any other conclusion than that the Chancellor did not err in denying leave to file the last amendment, and that therefore the decree dismissing the proceeding should be affirmed.