Henry Schmitz, for use of Abraham Ginsburg and May Ginsburg, Appellee, v. 75th and Exchange Drug Company, Inc., Garnishee, Appellant.

Gen. No. 40,799.

Heard in the first division of this court for the first district at the June term, 1939. ■■■ Opinion filed January 22, 1940.

BERNARD G. SANG and GEORGE M. SHKOLER, both of Chicago, for appellant.

No appearance for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

May 4, 1938, plaintiff recovered in the municipal court of Chicago a judgment against Abraham Ginsburg and May Ginsburg, his wife, for $150 and costs; upon return of execution unsatisfied the present garnishment action against the 75th & Exchange Drug Co., Inc., was commenced wherein, after the filing by the garnishee of its third successive answer of "no funds" to the third separate garnishment demand made upon it, the court found there was due Mr. Ginsburg, the judgment debtor, from the garnishee defendant, $75, and that this sum be recovered by Ginsburg for the use of the plaintiff. Defendant appeals.

The answer of the garnishee to plaintiff's first wage demand, dated August 1, 1938, stated that at the time of service of wage demand and at any time since then up to and including the date of the service of summons, Ginsburg was indebted to it in the sum of $2,350; its answer to the second wage demand, dated September 1, set the indebtedness at $2,250, and to the third demand, dated September 7, set it at $2,225; each answer stated that Ginsburg was entitled to a weekly salary from the garnishee defendant of $45, of which the garnishee retained $25 which it applied toward the indebtedness due it from Ginsburg, and that he was entitled, as a married man, the head of a family residing with same, to $20 of his weekly salary claimed

as his exemption, and, therefore, there was no money subject to garnishment.

The trial court heard the case upon a stipulation of facts wherein it was agreed that on, and for about four months prior to August 1, 1938, when the first garnishment demand was served, Ginsburg, the judgment debtor, was in the employ of the garnishee as a pharmacist, receiving a salary of $45 a week; that he was a married man and the head of a family and entitled to $20 a week exemption from garnishment; that on June 25, 1938, the garnishee corporation passed a resolution pursuant to which on June 27 a stock-purchase agreement and contract was entered into between it and Ginsburg in which it was recited that, whereas the corporation was in need of additional capital to continue to operate its business successfully and, whereas Ginsburg was desirous of purchasing 25 shares of its no par value common stock for $2,500, he thereby subscribed for the 25 shares and agreed to pay therefor $25 each and every week; the contract stated he was employed as a registered pharmacist and assistant manager at a salary of $45 a week, and that he could not be discharged as long as he conducted himself on the premises in a mannerly, businesslike and courteous manner and devoted his full time to his employment; the corporation agreed that when the $2,500 was fully paid it would issue the 25 shares of stock to Ginsburg, who was to have no rights or interest in the conduct of the business nor share in any of its profits until the $2,500 was paid in full; he could not assign this subscription right without the consent of the corporation, and in the event of the termination of his employment, whether by his dismissal or resignation, prior to the time of payment of the $2,500, he nevertheless was bound by his subscription to continue to make weekly payments of $25 until this amount was fully paid. The stipulation set forth that each Saturday commencing with July 2,

1938, through September 28, 1938, the garnishee paid $20 in cash to Ginsburg and retained $25 and credited this latter sum to him in accordance with the terms of the stock purchase agreement, and this credit appears in the books of the garnishee.

Though we have not been favored with a brief in behalf of plaintiff, his theory, pointed out with some speculation in the brief of defendant, seems to be that notwithstanding the stock-purchase agreement and contract between Ginsburg and his employer, there existed a relationship of debtor and creditor between them, and his employer, the garnishee, had funds in its possession in the form of salary belonging to Ginsburg, the judgment debtor, over and above his statutory exemption; that the stock-purchase agreement and contract, though valid and binding between Ginsburg and his employer, could not bind plaintiff or any other creditor of Ginsburg. Defendant's theory is that the agreement created an indebtedness on the part of Ginsburg to it, and plaintiff, therefore, should not prevail in this action. Defendant's brief states that the trial court indicated the stock subscription agreement was unfair to plaintiff in that it did not afford him a right of recovery against Ginsburg, and therefore disregarded it.

There can be no question that stock-purchase agreements are valid and binding contracts. In Fletcher, Cyclopedia Corporations, Perm. Ed., vol. 4, sec. 1404, p. 66, it is said that

"In the case of subscriptions after a corporation has been formed and is in existence, there is no difficulty in the formation of the contract. There must simply be both an offer and an acceptance, as in the case of any other contract." See also 13 Am. Jur. 371, sec. 279. In the instant case the subscription agreement is definite and irrevocable, giving the garnishee defendant a cause of action against Ginsburg if he should default, even though his employment be terminated

prior to the time of payment of the entire sum due, and obligating defendant to furnish the stock sold to Ginsburg upon the payment to it of the $2,500. Pursuant to its terms, deductions were made each week from the salary of Ginsburg to apply on his indebtedness. The validity of the resolution passed by defendant and the stock-purchase agreement entered into between it and Ginsburg pursuant thereto is not questioned by plaintiff. Nor was there any evidence to indicate that they were fraudulent or designed for the purpose of defeating the rights of plaintiff.

It is a well-established rule that the creditor stands in exactly the same attitude in relation to a garnished fund that the judgment debtor does, and can enforce only such rights as the debtor might enforce. The right of the creditor against the garnishee cannot, by garnishment, rise higher than the right of the debtor against the garnishee. If the right of the debtor is subject to a right of the garnishee, the right of the creditor is subject to the same right. The one exception to this rule occurs when there has been a fraudulent transfer of property. 12 R. C. L. 778, 779. In the instant case there was no evidence of fraud. In *Hibernian Banking Ass'n v. Morrison,* 188 Ill. 279, 281, it is said "that a judgment creditor garnisher cannot recover from a garnishee anything which the judgment debtor could not himself recover. Indeed, a garnishee proceeding based upon a judgment is a separate suit in the name of the judgment debtor for the use of the judgment creditor. The fact that the suit is for the benefit of a usee does not enlarge or change the right of the nominal plaintiff, as against the garnishee." And in *Larson v. McCormack,* 286 Ill. App. 206, it is said "that garnishment cannot lie unless the garnishee is indebted to the judgment debtor without uncertainty or contingency at the date of the answer of the garnishee. . . . that a fund is not subject to garnishment if the judgment debtor could not

maintain an action therefor." (Citing cases.) See also *Campagna for use of Kolarik v. Automatic Elec. Co.,* 293 Ill. App. 437.

Ch. 62, sec. 13 of the Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 109.296], provides:

"Every garnishee shall be allowed to retain or deduct out of the property, effects or credits in his hands all demands against the plaintiff, and all demands against the defendant, of which he could have availed himself if he had not been summoned as garnishee, whether the same are at the time due or not, and whether by way of set-off on a trial, or by the set-off of judgments or executions between himself and the plaintiff and defendant severally, and he shall be liable for the balance only after all mutual demands between himself and plaintiff and defendant are adjusted. . . ." We agree with the argument of defendant that when the trial court indicated the stock-subscription agreement was unfair to plaintiff in that it did not afford him a right of recovery against the judgment debtor, Ginsburg, the court failed to recognize the fact that Ginsburg was also indebted to the garnishee defendant. In other words, the judgment debtor has two creditors — the judgment creditor and the garnishee defendant, and the rights between these two creditors are fixed by the above-quoted provisions of the Garnishment Act wherein the garnishee is allowed to retain or deduct out of the property, effects or credits in his hands all demands against defendant of which he could have availed himself had he not been summoned as garnishee.

Garnishee defendant paid the statutory exemption of $20 a week to Ginsburg and, having applied the $25 balance of his weekly salary to the indebtedness due it from him, there was nothing further due him at any time any of the garnishment actions involved herein were pending that was subject to garnishment.

For the reasons above stated we hold the garnishee defendant should be discharged in each of the three actions pursued by plaintiff in this case, and the judgment is therefore reversed.

*Reversed.*

MATCHETT, P. J., and O'CONNOR, J., concur.