**Ruby E. Olson, Plaintiff-Appellant, v. Peter H. Olson, Defendant-Appellee.**

Gen. No. 65–66.

Second District.

December 30, 1965.

George Spitz, of DeKalb, and Tyler and Peskind, of Aurora (George Spitz and Lloyd J. Tyler, of counsel), for appellant.

Leifheit & Cliffe, of DeKalb (Daniel L. Cliffe, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an appeal, by plaintiff, from a divorce decree entered in her favor, with reference to its provisions regarding property rights and alimony. Plaintiff seeks a reversal of that part of the decree which awarded the household furnishings to her in lieu of alimony, and which decreed that the last half of the 1963 taxes on plaintiff's 172-acre farm in DeKalb County and the interest on the mortgage thereon to March 1, 1964, were the joint obligations of both parties.

Plaintiff contends that the farm was operated as a partnership; that one-half of the mortgage indebtedness thereon, which was incurred during the marriage, is the defendant's obligation; and that the defendant should be decreed to pay one half thereof either as alimony or in settlement of property rights.

It is the defendant's contention that no partnership existed in connection with the operation of the farm; that the funds of the parties were so commingled that it was impossible to determine the amount of money spent for farm business purposes and for living expenses;

that the mortgage indebtedness was the result of the plaintiff's personal expenditures and her contribution to the living expenses of the family unit; and that since the defendant has no interest in the farm, he should not be held liable for one half the mortgage thereon.

The plaintiff, a widow with three young daughters, and the defendant, who had one daughter, were married July 21, 1948. As issue of the marriage, a daughter, Deborah Olson, was born. They all lived together as a family unit, apparently without differentiation in the treatment of the children. The decree for divorce was entered December 9, 1964.

At the time of the marriage, plaintiff owned a 120-acre farm in DeKalb County, which she sold in 1952, for $54,000. In November of 1951, she purchased the 172-acre DeKalb County farm which she now owns, and title thereto was taken in the DeKalb Trust and Savings Bank, as Trustee, with plaintiff as the beneficiary under this land trust. Plaintiff had other funds and, with the aid of a temporary advancement from her father, paid for the farm with her own money. She testified that she had approximately $8,000 left after buying the 172-acre farm, which sum was deposited in her personal account, but eventually went into the common account of the parties; and that at the time of the trial the farm was probably worth $750 per-acre, or $129,000.

Thereafter, in 1954, plaintiff encumbered this farm for $25,000 without the knowledge or signature of the defendant, and used this money to buy a house, which was subsequently sold for $24,000. Plaintiff testified that this sum was likewise deposited in her personal account and subsequently transferred into the common account. To clear up the interest due on the $25,000 loan and to pay other outstanding debts, a new mortgage was placed on the farm in 1961, in the sum of $35,000. Both plaintiff and defendant signed this mortgage and note, and the balance presently due thereon is $33,000.

Plaintiff testified that she had a complete line of furniture when the parties were married in 1948; and that when she purchased the 172-acre farm in 1951, plaintiff and defendant purchased additional furniture located at the farm, and got a bill of sale for it. The record contains no further evidence concerning the acquisition of further items of furniture.

The parties operated the farm as a grain and stock farm. In addition, the plaintiff worked as a secretary, and the defendant did carpentry work between 1961 and 1963. These earnings also went into the common account. The defendant had no bank account other than the common account.

The testimony is at variance relative to the machinery which was purchased in connection with the operation of the farm, but it appears to have been a full line of farm machinery. The bulk of the machinery, which plaintiff owned at the time of the marriage, was old and obsolete. The new machinery was paid for from the common account.

The plaintiff kept the records and made the deposits, but she did not keep a set of books. While both parties drew checks on the common account, plaintiff also maintained a separate account. When she sold the house aforementioned, the proceeds were placed in her separate account. She testified that she transferred sums therefrom to the common account, from time to time, to meet family and farm expenses, but offered no evidence as to the time and amounts of such transfers.

The farm operation apparently did not prosper. In seven out of eleven years, for which tax returns were available, the farm operated at a loss. The losses were largely due to a break in prices which caused cattle feeders across the country to suffer financial difficulties. However, such losses also reflected depreciation on the buildings and equipment which accounted for about one half thereof.

The defendant built a 24′ x 32′ addition to the farm house on the 172-acre farm, which he estimated to cost $10,000. He was not paid for his work, and the materials were paid for from the common account. On the same basis, he repaired the corn crib and put a new roof on the machine shed. In certain instances he had to have help in connection with such work, and he repaid that labor in kind to the neighbors who assisted him.

During the marriage, the cost of a new car, farm machinery, insurance, cattle, feed, seed, fertilizer, living and medical expenses, personal items, the costs of four weddings for members of the family unit, as well as taxes, and principal and interest on the mortgage, were paid from the common account. The testimony indicates that neither plaintiff nor the defendant were extravagant in their personal expenditures.

Confronted with the maze of unidentified figures covering such expenses, and in the absence of books of account, the trial Court, after hearing and considering the evidence, entered a decree for divorce; awarded the custody of the minor child to plaintiff and directed the defendant to pay $20 per week for her support; set visitation hours for the defendant; awarded the plaintiff all of the household furnishings as her sole property in lieu of alimony; ordered the farm machinery owned by the parties to be their joint property, with each party having an undivided one half interest therein; ordered that the decree for divorce shall in no way affect the lease between the parties whereby plaintiff's farm was leased to defendant; ordered that the common bank account with a balance of $428.57 be divided equally between the parties; awarded the 1955 Oldsmobile to plaintiff and the 1951 Chevrolet to the defendant; and ordered that the last one half of the 1963 taxes and the interest payment on the mortgage to March 1, 1964, be the joint obligation of the parties—each party being liable for one half thereof.

■ ■ As between the parties, the question of the existence of a partnership relation is largely one of intent. In the absence of a written partnership agreement, as in the case at bar, the question of whether it was the intention of the parties that an agreement or arrangement constitute a partnership, must be determined from the language and conduct of the parties and from all the facts and circumstances surrounding the transaction. Peck v. Peck, 16 Ill2d 268, 280, 157 NE2d 249 (1959); Englestein v. Mackie, 35 Ill App2d 276, 288, 182 NE2d 351 (1st Dist 1962); Cline v. Cline, 12 Ill App2d 231, 234, 235, 139 NE2d 828 (4th Dist 1956).

■ The following factors are material in determining the existence of a partnership: the manner in which the parties have dealt with each other; the mode in which each has, with the knowledge of the other, dealt with persons in a partnership capacity; whether they have filed with the county clerk, a certificate setting forth the name of the partnership, in event the firm name does not include the true name of the persons transacting such partnership business (Ill Rev Stats 1965, c 96, pars 4–8a); whether they have carried telephone listings and signs on trucks, etc., using the firm name; and whether they have shared the profits of the partnership. Rizzo v. Rizzo, 3 Ill2d 291, 299, 300, 120 NE2d 546 (1954); Englestein v. Mackie, supra, 288; also see Section 7(2), (3) and (4) of the Uniform Partnership Act (Ill Rev Stats 1965, Chap 106½, par 7(2), (3) and (4)).

■ The record is replete with evidence that no partnership existed or was contemplated by the parties. Plaintiff did not deal with defendant as a partner in the handling of funds, some of which were deposited in her personal account and others in the common account—according to her fancy. The account, as shown by the checks, was merely a joint account of plaintiff and defendant upon which either could draw checks. It was

233

not a partnership account. Neither of the parties, with the knowledge of the other, dealt with others in a partnership capacity. There is no record of the parties doing business under any partnership name. They carried no listings, telephone or otherwise, and had no signs indicating a partnership business or the use of a firm name. The record does not show that they filed partnership income tax returns. There is no record of the sharing of any profits or losses. The maintenance of a personal bank account by plaintiff and her sole business operation in the purchase of the farm indicate that, to her, the farm venture was not a partnership. In addition, her complaint for divorce, by separate count, or otherwise, did not allege the existence of a partnership or seek its dissolution.

■ The plaintiff and defendant, as husband, and wife and parent, were engaged in the joint venture of supporting, rearing and educating a family. The funds for this purpose, part of which were kept in a common account, were derived from farming, cattle raising, and the personal endeavors of both plaintiff and defendant aside from their farm efforts. However, special agreements or arrangements, for particular joint undertakings and adventures, do not constitute a partnership.

■ Even if the parties were partners, the plaintiff could not maintain an action at law against the defendant upon a demand growing out of the partnership, until the partnership accounts had been settled and a balance struck. Milligan v. Mackinlay, 209 Ill 358, 360, 70 NE 658 (1904); Carter v. Wright, 275 Ill App 224, 228 (4th Dist 1934). Such procedure had not been attempted herein.

Plaintiff further urges that defendant should be ordered to discharge one half of the $33,000 mortgage debt on her farm. She argues that in the absence of such order, plaintiff must pay the debt and then demand

contribution from defendant as co-obligor on the mortgage note.

■ However, we do not believe that it is within the contemplation of the divorce decree that, as between the parties, the defendant is liable in any respect with reference to the $33,000 farm mortgage. He did not know of the original mortgage or note on the farm until after their execution, and he did not sign them. It was only when the incumbrance was increased to $35,000 that the defendant was asked to sign. He had no interest in the farm, beneficial or otherwise, other than as husband of plaintiff and a party in possession. It is apparent that he signed the mortgage and note, as requested, to cut off any possible rights which he might have in and to said premises, and to further secure the payment of the note.

The mortgagee is not a party to this proceeding and the decree herein can have no binding effect on it with reference to the obligation of the parties to it, but as between themselves, we find that it was the intent of the decree to relieve the defendant of all obligation to pay any part of said note, by contribution or otherwise, except as therein provided. The question before us is the propriety of this portion of the decree.

We recognize that it has frequently been held that a cotenant, who pays more than his share of a debt, principal or interest, secured by a mortgage on the commonly owned property, is entitled to reimbursement by contribution from his cotenants to the extent to which he paid their share of the indebtedness. Annotation 48 ALR2d 1305; 26 Am Jur Sec 79, p 704. However, plaintiff and defendant here were not cotenants in the ownership of the farm. The plaintiff was the sole beneficial owner thereof and the defendant had no interest therein. Plaintiff has cited no law, and we have found none, holding that she is entitled to contribution under the facts of this case.

Plaintiff further urges that, under the equities of the case, the defendant should be ordered to pay one half of the mortgage in that after 16 years she ended up with a $33,000 jointly created debt against her farm. However, the defendant contributed to the worth of the farm through building an addition to the house and repairing its buildings, and he helped to support her and her three daughters and to educate the daughters. His gain from this venture was age and experience, while plaintiff acquired a 172-acre farm, which, according to her estimate, is worth $129,000, subject to an indebtedness of $33,000. At the time of the marriage of the parties, plaintiff owned a 120-acre farm, free of encumbrance, which she subsequently sold for $54,000. Thus, the existing equities do not make a very impressive case for the plaintiff.

■■ The Court below acted within the powers vested in it in entering the decree appealed from herein (Ill Rev Stats 1965, c 40, pars 18 and 19), and the only question before us is the propriety of the provisions of the decree appealed from. The trial Court heard the evidence and saw the witnesses; it was its duty to make the necessary determination of facts; and its findings are presumed to be correct. In re Estate of Wolfner, 58 Ill App2d 423, 429, 207 NE2d 724 (1st Dist 1965). The evidence was ample to support the findings of the trial Court and it is not for us to substitute our findings for those of the Court below unless such findings are clearly and manifestly against the weight of the evidence. Stevens v. Fanning, 59 Ill App2d 285, 294, 295, 207 NE2d 136 (2nd Dist 1965). Such is not the circumstance in the case at bar.

■ Accordingly, the decree of the Circuit Court is affirmed, and pursuant to the authority vested in this court by section 92(1)(e) of the Civil Practice Act (Ill Rev Stats 1965, c 110, par 92(1)(e)), the last paragraph of said decree is hereby expanded, and it is hereby

ordered, as between plaintiff and defendant, that the defendant is relieved of all obligation to pay any part of the $35,000 mortgage note, upon which the balance remaining unpaid is $33,000, by contribution or otherwise, except as provided in said decree.

Decree affirmed and expanded.

ABRAHAMSON, P. J. and MORAN, J., concur.