Joseph Baron and Virginia Baron, Garnishor-Appellee, v. Catarino Villareal, Defendant, Coronet Insurance Company, Garnishee-Defendant-Appellant.

Gen. No. 68–25.

Second Judicial District.

October 18, 1968.

M. A. Haft & Associates, of Chicago, for appellant.

Paulson and Ketchum, of Chicago, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The narrow issue presented by this appeal is whether the plaintiffs, judgment creditors of Catarino Villareal, an uninsured motorist and tort-feasor in the accident in question, can recover from Coronet Insurance Company (Coronet)—their insurer—by garnishment proceedings, the amount of the judgments rendered in their favor and against Villareal.

On April 9, 1963, Adams Mutual Insurance Company issued its combination Automobile Policy with a Family Protection Endorsement to the plaintiff Joseph Baron, whose wife Virginia Baron was an additional insured thereunder. The garnishee defendant, Coronet, assumed Adams Mutual Insurance Company's liability under the policy. Under the Family Protection Endorsement, Coronet, subject to certain conditions, agreed to pay all sums which the insured should be legally entitled to recover as

damages from the owner or operator of an uninsured automobile because of bodily injury.

Under the Insuring Agreements of the policy, with reference to "Damages for Bodily Injury caused by Uninsured Automobiles," Coronet agreed:

> "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; *provided, for the purposes of the endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree and the insured so demands, by arbitration."* (Emphasis Ours.)

The endorsement under the heading of "Conditions," provided:

> "6. Arbitration: If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this endorsement, then, upon written demand of such person, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction

368

thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement."

and

"9. Action Against Company. No action shall lie against the company unless, as a condition precedent thereto, the insured or his legal representative has fully complied with all the terms of this endorsement."

Under the entitlement "Exclusions," it is provided:

"This endorsement does not apply: . . .

"(b) to bodily injury to an insured, or care or loss of services recoverable by an insured, with respect to which such insured, his legal representative or any person entitled to payment under this endorsement shall, without written consent of the company, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor; . . ."

On September 3, 1963, Joseph Baron and Virginia Baron, his wife, filed a complaint against Catarino Villareal, defendant, charging that he negligently, while under the influence of intoxicating liquor, drove his car into the rear end of the plaintiffs' car, and that as a result thereof, the plaintiffs sustained permanent injuries and damages to their automobile. The defendant filed an answer to said complaint and, upon trial, two separate verdicts were rendered by a jury whereby each plaintiff was awarded damages in the sum of $2,500. On May 10, 1966, judgments were entered on these verdicts, and such judgments are the basis for the garnishment action against Coronet.

On January 19, 1967, the attorney for the plaintiffs filed an affidavit in the original negligence action for the garnishment of Coronet, which stated:

"4. I believe Garnishee, Coronet Insurance Company, is indebted to the judgment debtor, or has in its possession, custody or control, property belonging to him, or in which he has an interest."

Interrogatories were addressed to and answered by Coronet wherein it stated that when served with summons it did not have in its possession, custody or control, any property belonging to the judgment debtor, or in which he had an interest; and that at such time it was not otherwise indebted to him, no matter when payable.

Coronet's answers to the interrogatories were contested at a bench trial wherein the magistrate denied Coronet's motion for judgment at the close of the plaintiffs' evidence and at the close of all evidence. Subject to certain conflicts, evidence was offered by the plaintiffs and Coronet which, in summary, indicated that the plaintiffs' attorneys were in contact with Coronet from time to time after the accident and prior to the entry of the judgments in the original action; that plaintiffs never made a written demand for arbitration, although they wrote a letter requesting Coronet to advance $200 as the costs for arbitrating the cause, and Coronet did not answer such letter; that plaintiffs never received the written consent of Coronet to prosecute the action to judgment; and that the plaintiffs, in an effort to effect a settlement with Coronet, offered to dismiss the action in question and to arbitrate the controversy.

Apparently, this evidence, which we regard as immaterial to the issues of the garnishment proceeding, was considered by the magistrate, who on November 6, 1967, entered judgment in favor of the plaintiffs and against Coronet in the sum of $5,035.60 and costs. Coronet appealed from this judgment.

Coronet contends that since it had no property in its possession, custody or control at the time of the service of the summons, which belonged to Villareal, and since it was not then otherwise indebted to him, it should have been discharged; that under the law a fund is not subject to garnishment if the judgment debtor could not maintain an action therefor; and that the garnishment statute must be strictly construed. Coronet likewise asserts that the magistrate erred in various evidentiary rulings.

The plaintiffs urge that garnishment was a proper proceeding in the case at bar, and that Illinois case law allows a garnishment action against an insurance company on its assumed liability. The plaintiffs offer other peripheral points to support their garnishment judgment, but they rise or fall with their primary contention.

██ The purpose of the Garnishment Act is to make available assets of a judgment debtor for application in payment of the judgment against him. Garnishment was unknown at common law and rests wholly upon statute. Roth v. Kaptowsky, 401 Ill 424, 429, 430, 82 NE2d 661 (1948).

The Garnishment Act of 1872 was repealed and comprehensively revised by the new Act of 1959. The proceeding at bar is governed by the new Act. Section 1 of the Act provides:

> "Upon the filing by a judgment creditor or other person of (a) an affidavit that the affiant believes any person is indebted to the judgment debtor, other than for wages, or has in his possession, custody or control any other property belonging to the judgment debtor, or in which the judgment debtor has an interest, and (b) written interrogatories to be answered by that person with respect to the indebtedness or other property, the clerk of the court in which the judgment was entered shall issue summons against the person named in the affidavit commanding him to appear before the court as garnishee and

answer the interrogatories in writing under oath."
(Illinois Rev Stats 1967, c 62, par 33.)

Section 4 provides for the issuance of summons with interrogatories and the return thereof; section 11 specifies the procedure for the contest of the truth or sufficiency of the garnishee's answer and provides for the entry of judgment. (Illinois Rev Stats 1967, c 62, pars 36, 43.)

■ Section 1 of the new Act is derived from the first unnumbered paragraph of former section 1 of the Act of 1872, consequently, decisions relative to this portion of section 1 are applicable under the old as well as under the new Act. In the early case of Webster v. Steele et al., 75 Ill 544 (1874), at page 546, the court stated:

"As was said in May v. Baker, 15 Ill 90, the indebtedness referred to in the statute is legal indebtedness, such as could be enforced in a court of law by an action in the name of the defendant in attachment against the garnishee. The principle is, that process of garnishment, being a legal proceeding given by statute, only entitles a party to recover such indebtedness as could be recovered by an action of debt, or indebitatus assumpsit, in the name of the attachment or judgment debtor against the garnishee. And so the authorities elsewhere hold. Harrell v. Whitman, 19 Ala 135; Hassie et ux. v. G. I. W. U. Congregation, 35 Cal 378.

"The statute will bear no other construction than that heretofore given to it. The reason is obvious. By the practice which obtains in this State, the judgment against the garnishee must be rendered in favor of the attachment or judgment debtor, for the benefit of the attachment or judgment creditor, who is the real plaintiff, against his own debtor. Whatever surplus there may be after paying the creditor belongs to the debtor in whose name the suit is prosecuted. This is according to the analogies of the

law, for in all actions at law the suit must be in the name of the party in whom is the legal interest of the subject matter. Stahl v. Webster, 11 Ill 511."

■■ The garnishment process is not a distinct and separate suit, but an ancillary or additional step in the original action for judgment. It is remedial in nature and designed to reach property belonging to the judgment debtor after ordinary execution has failed. Zimek v. Illinois Nat. Cas. Co., 370 Ill 572, 574, 19 NE2d 620 (1939).

■ Our courts have frequently held that a claim asserted by a judgment creditor against a garnishee must be one which the judgment debtor himself could have maintained. Bank of Homewood v. Gembella, 48 Ill App2d 316, 319, 199 NE2d 293 (1964); Morphet v. Morphet, 19 Ill App2d 304, 307, 152 NE2d 492 (1958); Schmitz for Use of Ginsburg v. 75th & Exchange Drug Co., Inc., 303 Ill App 192, 196, 197, 24 NE2d 889 (1940).

In the case at bar it cannot properly be asserted that Villareal, the judgment debtor, could maintain any claim against Coronet by virtue of the Family Protection Endorsement of the policy issued to Joseph Baron, wherein Coronet agreed, subject to certain conditions, to pay all sums which Baron was legally entitled to recover as damages from the owner or operator of an uninsured automobile (Villareal) because of bodily injury.

■ The plaintiffs state in their brief that "Illinois case law allows an injured party of an automobile accident to sue the negligent party in tort, obtain a judgment therefrom, and then proceed in garnishment to collect from the negligent driver's insurance company." This general statement is true, but it has no application in the case at bar, where the plaintiffs in the garnishment proceeding seek to garnishee their own insurance company rather than that of the negligent driver. Coronet has no liability to Villareal, the tort-feasor, under its policy.

Consequently, we cannot agree with the plaintiffs that the principle which they assert authorized the garnishment judgment in this case, either by direct application or by analogy.

We conclude that garnishment is not a proper remedy whereby the plaintiffs can recover from Coronet, and that the garnishee judgment in favor of the plaintiffs and against Coronet in the sum of $5,035.60 and costs, must be reversed. However, we are not adjudicating the question of whether or not the plaintiffs, in a proper action, can recover against Coronet under the facts of this case.

Judgment reversed.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.