F. D. RICH CO. OF PUERTO RICO, INC., Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, DOMINGO RAFFUCCI, JUDGE, Respondent; ANÍBAL L. ARSUAGA, INC., Intervener.

No. O-70-7.    Decided June 16, 1970.

156

—0—

Amadeo, Benet & Oliveras, Rodolfo Gluck Figueroa, and *Emigdio R. Sellés* for petitioner. *Rodríguez Ema, Rodríguez Ramón, Benítez Gautier & Zequeira, D. Padín Mimoso,* and *A. Emanuelli Belaval* for intervener.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The contention in this case requires us to decide as to the availability of garnishment by a materialman of a subcontractor in mechanical work in a housing project of an alleged credit of the subcontractor in the hands of the chief contractor of said housing project. The day before the notice of garnishment the chief contractor had considered the contract of the subcontractor as terminated because of nonperformance and the pending mechanical work was finished by another firm contracted and paid by two other persons.

For two reasons which we state hereinafter we conclude that said garnishment did not lie.

The controversy arises because the intervener, Aníbal Arsuaga Inc. (hereinafter called Arsuaga) which is the materialman in question, upon obtaining a judgment against the Metropolitan Mechanical Constructors Inc. (hereinafter

called Metropolitan), the subcontractor of the mechanical work in the aforementioned project, and its surety, for the sum of $29,920.69, requested and obtained from the trial court an order of attachment to secure the effectiveness of said judgment. On the date set to that effect, the marshal notified petitioner (hereinafter called Rich), which was the chief contractor of the project, that "proceeded to attach up to those sums ($29,920.69 of principal and $5,000 of attorney's fees) any right, title, and interest which Metropolitan may have in the amount of $65,000 which you owe to said defendant on that date" (August 2, 1968). Said order warned Rich to the effect that it shall not make any payment to Metropolitan without the intervention of Arsuaga and/or the court and that any payment of said sums would be null and would constitute contempt of court.

Rich refused to deliver any amount to the marshal. Arsuaga then requested that "the Court order Rich, among others, . . . to appear to show cause why it should not be punished for contempt of court upon failing to comply with the payment of the sums attached and/or why a writ of execution of judgment should not be issued, among others, against it."

In the conference before the hearing of the foregoing request, the parties stipulated that:

(1) Rich contracted Metropolitan to perform the mechanical work of the project for the sum of $391,649.

(2) From that amount Rich had not yet paid the sum of $57,189.29 to Metropolitan on August 1, 1968, when Rich notified Metropolitan's surety that Metropolitan had incurred in nonperformance of contract and Rich had decided to terminate its contract with Metropolitan.

(3) The writ of garnishment was served upon Rich on August 2, 1968.

(4) On September 9, 1968 Nolla and Morris contracted David Andújar, Inc. (hereinafter called Andújar) to terminate the contract of Metropolitan with Rich, which has not paid any amount from the $57,189.29 withheld for the termination of said contract by Andújar.

(5) The parties agreed that still there remained to be determined (a) the sum paid by Nolla and Morris to Andújar; (b) whether the subcontract was completed to the satisfaction of the owner of the project which was the Urban Renewal and Housing Corporation (U.R.H.C.); and (c) whether or not Rich still owes to Metropolitan the $57,189.29 under the original contract.

(6) In addition to what has been stated, the trial court concluded that Rich alleged that the U.R.H.C. has claims against the withheld amount of $57,189.29 for plumbing deficiencies and smoke test which amount to $2,951.25.

From the oral and documentary evidence introduced in the aforementioned hearing it appears that:

(7) Andújar has received about $44,000 from Nolla and Morris to complete the mechanical work which Metropolitan originally contracted.

(8) The record shows (a) Rich's approval of this subcontract with Andújar; (b) that the work under this subcontract was completed to the satisfaction of the U.R.H.C., with the exception of the smoke test and some deficiencies in the manholes which were going to be deducted from the contractor both amounting to the sum of $2,951.25; (c) that Rich has not paid any sum to Andújar for the termination of the mechanical work.

(9) The housing project in its entirety was accepted by the U.R.H.C. on January 7, 1969.

(10) The U.R.H.C. owes some $370,000 to Rich. Luis Enrique Santiago, Contracting Officer of the U.R.H.C. in charge of the administrative part of the housing project in

question, testified that the claims of materialmen and sub-contractors amounts to $200,000 besides a deficiency in the plastering in regard to which there are contracts for some $60,000; that as far as he knows, Metropolitan has no claim; that if Metropolitan goes to the U.R.H.C. for money owed by Rich, the U.R.H.C. is not going to pay it.

(11) The withholding of $57,000 under Metropolitan's subcontract was not for work performed.

(12) Arsuaga's garnishment was the only one received by Rich on August 2, 1968, of funds owed by Rich to Metropolitan.

(13) An executive from Rich testified that Metropolitan was an insolvent debtor. Arsuaga's counsel informed that Arsuaga has not been able to execute any judgment against Metropolitan.

(14) An executive from Rich testified that "Aníbal Arsuaga has a claim and other materialmen also have other claims . . . some by complaints; others by letters; others by notifications to the U.R.H.C., and in its case (Arsuaga's) I think there is no amount fixed. . . ."

The trial court concluded that:

"However, the evidence established that the plumbing deficiencies indicated amount to $825 and that the claim for the aforementioned smoke test amounted to some $2,126.25, for which reason, if Rich is liable for such claims to the U.R.H.C., the same would amount in total to $2,951.25. If we deduct said amount from the $57,189.29, we must conclude, and thus we do, that Rich owes the sum of $54,238.04 to Metropolitan Mechanical, sum which it has in its possession and which is subject to the results of this action since August 2, 1968, when it was partly attached by plaintiff to secure the effectiveness of judgment."

The trial court distinguished this case from that of *Banco Popular* v. *Vázquez*, 97 P.R.R. 155 (decided on April 1, 1969), because in the case at bar "a complete and final garnishment was performed . . . of the funds Rich owed to

Metropolitan while in *Banco Popular, supra,* the order of attachment . . . limited the attachment to the condition that the credit to be attached be demandable at the present time"; that Rich violated the order of attachment upon failing to pay the amount of the attachment to the marshal, but that the court preferred to order Rich to pay to Arsuaga within a period of 15 days the sum of $27,434.62 plus $2,700 for attorney's fees or otherwise the clerk's office would issue a writ of execution of judgment against said firm.

Rich assigns that the trial court erred (1) in concluding that on August 2, 1968, Rich "owed Metropolitan no sum whatsoever"; (2) that Arsuaga had garnished funds in Rich's possession despite the fact that on that date the contract with Metropolitan had been considered terminated and the balance to the total price of the contract was not owed since on that date the work had not been performed; and (3) in using the proceeding for contempt to determine whether Rich owed any amount to Metropolitan.

Rich argues that under the facts previously set forth it cannot be held that Metropolitan was Rich's creditor on August 2, 1968, for the day before Rich had considered as terminated the subcontract with Metropolitan and the evidence shows that ever since that date the latter had no claim against Rich and therefore any person subrogated to the rights of Metropolitan, as was the case of the materialman Arsuaga, could not claim either against Rich; that the garnishment could not freeze Metropolitan's funds in the possession of Rich because at that time the obligations of the ones and the others had not been liquidated and as a matter of fact the contract had been considered as terminated without its completion and subject to third-party claims and to a claim for damages for nonperformance of contract.

On the contrary, Arsuaga maintains that the trial court heard the witnesses, weighed the evidence, and concluded as a question of fact that Rich owed $54,238.04 to Metropolitan,

reason why the garnishment levied was completely legal; that Rich seeks to enrich itself unjustly at the expense of Metropolitan and its stockholders.

■ Rule No. 56 of the Rules of Civil Procedure authorizes the process of garnishment. *Commonwealth* v. *Superior Court*, 98 P.R.R. 513 (1970); *Banco Popular* v. *Vázquez, supra.*

It shall be noted that in the case at bar they proceeded to attach ". . . any right, title, and interest which Metropolitan may have in the amount of $65,000 which you [Rich] owe to said defendant." Besides, Rich was warned not to make any payment to Metropolitan without the intervention of the court and of plaintiff. It was not required to deposit, up to the amount claimed by Arsuaga, any sum which it intended to pay to Metropolitan subsequent to the attachment in question. Obviously it was assumed that on August 2, 1968, when the said attachment was sought to be levied, the $57,189.29 which Rich failed to pay under the Metropolitan subcontract, said sum belonged to the latter to the point that the latter could legally claim it with success. Therefore they proceeded to attach directly $29,920.69 principal and $5,000 for attorney's fees, amount of the claim of the materialman Arsuaga, it being understood that failure to deliver that amount to the marshal by virtue of the order of attachment constituted contempt of the court which issued it.

■ In regard to the availability of garnishment the courts have elaborated the following standards:

(1) It is essential for the third party to possess property belonging to the person against whom the judgment sought to be enforced was rendered.

(2) The right of the garnishing creditor against the third party cannot be greater than the right the judgment debtor had against said third party.

(3) The test of the availability of the garnishment consists in determining whether at the time it is levied the judg-

ment debtor had a good cause of action against the third party to recover the property sought to be garnished.

(4) The debt sought to be garnished must be a liquid sum or one which can be determined through computation or known facts, or through subsequent facts, without contingencies when the garnishment is levied.

■ (5) An uncertain and contingent debt in the sense that it may never mature or be payable cannot be garnished. However, the denial of liability or a counterclaim for defective performance or when an arbitration is being transacted in regard to a controversy as to the unpaid amount, does not render the obligation so uncertain or contingent as to exempt it from being garnished.

■ (6) The garnishment proceeding under the aforementioned Rule 56 is not a separate and distinct action, but an additional step within the main action. It is by its nature a remedial process for the purpose of obtaining property from the judgment debtor when the ordinary execution fails. *Banco Popular, supra; Walker* v. *Paramount Engineering Co.,* 353 F.2d 445 (6th Cir. 1965); *O'Leary* v. *Superior Court of Gila County,* 452 P.2d 101 (Ariz. 1969); *American Nat. Ins. Co.* v. *United States Fidelity & G. Co.,* 215 So.2d 245 (Miss. 1968); *Peninsula Ins. Co.* v. *Housen,* 238 A.2d 95 (Md. 1968); *Trinity Universal Ins. Co.* v. *Bellmead State Bank,* 396 S.W.2d 163 (Texas 1965); *Sundberg* v. *Boeing Airplane Co.,* 328 P.2d 692 (Wash. 1958); *Samuels* v. *Superior Court of Los Angeles County,* 81 Cal. Rptr. 216 (1969); *Carter* v. *Sherwood Plaza, Inc.,* 164 S.E.2d 867 (Ga. App. 1968); *Baron* v. *Villareal,* 241 N.E.2d 227 (Ill. App. 1968).

In *Trinity Universal Ins. Co., supra,* contractor Marble agreed to construct a building for a cooperative. Trinity bound itself as surety therein. Marble being unable to proceed further in the performance of the contract, Trinity carried it out, letting Marble perform the work through an

assignment by Marble to Trinity of all the payments and rights under the construction contract. The Bellmead State Bank which had recovered judgment against Marble for $53,469.75, notified the cooperative the garnishment of the balance the latter owed Marble in the sum of $25,966.84, amount which the cooperative deposited in court. It was decided that the amount withheld by the cooperative was not garnishable for Marble had no right to said funds. The surety whose funds were used to satisfy Marble's obligations subrogated to the rights of the owner of the work to apply the contract balances to the completion of the project. A formal declaration of default was not necessary. The bank as garnishment creditor could acquire no greater rights into said fund than those of his debtor.

In *Sundberg, supra,* the materialman of a contractor served writ of garnishment of funds withheld by the owner of the project under the contract of construction. It was decided that the contractor could not recover the funds withheld because his right to payment was contingent upon completion of the contract which he did not do but his surety did it for him; that since the contractor had failed to perform his contract, at the time of the garnishment, the owner owed nothing to the contractor; that, besides, the retained amount had not been liquidated when the writ of garnishment was served upon the owner since it was subject to claims which could arise from the nonperformance of the contract by the contractor.

Under similar circumstances it was held in *Carter, supra,* that upon abandoning his construction contract, the contractor could not collect any additional amount from the owner of the project, and therefore, there did not exist any credit in his favor in the hands of the owner subject to garnishment by a creditor of the contractor.

In *Banco Popular, supra,* garnishment was levied by the Banco Popular on an alleged credit of $86,210.13 which a

contractor had in his favor with the U.R.H.C. subject to the condition that said sum be liquidated and demandable in favor of said contractor. The writ of garnishment provided, also, that in the event said amount was not demandable, the U.R.H.C. would retain in its possession the same until it became demandable when it would deliver same to the marshal as property garnished by the bank.

The judgment (which determined the preferred right of the aforementioned bank in connection with the funds and certifications presented and its process at the time the contractor was declared in default) was set aside insofar as the amount in question is concerned. The record was remanded in order to determine whether, upon completion of the works, said amount or part thereof had become the contractor's property for if he is not entitled to any part, nothing will correspond to the bank which, as garnishing creditor, has no more rights to those funds in the hands of a third party than those that could correspond to its debtor; that if it was determined that the amount was liquid in favor of the contractor, then it would be in order to determine the preferred right to the same between the bank as garnishing creditor and the contractor's surety in the event said surety had disbursed amounts to U.R.H.C. in fulfillment of its obligations as surety.

In the case at bar the evidence shows that: (1) the day before the garnishment of funds in Rich's hands was sought to be levied the latter had considered the subcontract with Metropolitan as terminated and it was thus notified to the surety of said subcontractor; (2) the amount withheld did not cover any work whatsoever performed by Metropolitan; that work was performed, to the satisfaction of Rich and of the U.R.H.C., by subcontractor Andújar who was paid $44,000 for that work by two other persons; Rich has not paid any amount for the termination by Andújar of the mechanical work of the aforementioned housing project.

■ Under the foregoing circumstances, it is evident that when Rich considered the subcontract with Metropolitan as terminated on August 1, 1968, as a result of the latter's nonperformance, Rich owed nothing to Metropolitan since that date, particularly when it appears from the evidence that the amount of $59,189.29 still unpaid by Rich under the subcontract with Metropolitan did not cover the work performed by the latter. Besides, on August 2, 1968, the retention in question was not a liquid debt without contingencies. On the contrary, it was subject to claims and readjustments in view of the rights (1) of Metropolitan's surety and of others by virtue of the payments made to Andújar for its termination of the mechanical work; (2) of the U.R.H.C., as owner of the project; (3) of Arsuaga and other materialmen and creditors of Metropolitan, and of Rich in view of its possible claim against Metropolitan on the ground of the latter's nonperformance of the subcontract of the mechanical work of the project. When on August 2, 1968, Arsuaga sought to garnish the above-mentioned sum of $59,189.29 in Rich's possession, Metropolitan lacked at that time a cause of action against Rich to recover said sum. Since the right of garnishing creditor Arsuaga against Rich could not be greater than that which Metropolitan had against Rich, Arsuaga did not have any right to garnish the sum in question withheld on August 2, 1968. Besides, that sum on said date was not a liquid, determinable debt without contingencies of Rich in favor of Metropolitan.

By virtue thereof, the order of the trial court rendered in this case on December 19, 1969, will be reversed and the case remanded to said court for further proceedings consistent with the foregoing decision.

The Chief Justice and Mr. Justice Hernández Matos did not participate herein. Mr. Justice Santana Becerra abstained from intervening.

—o—

ON MOTION FOR RECONSIDERATION

MR. JUSTICE TORRES RIGUAL delivered the opinion of the Court.

San Juan, Puerto Rico, February 22, 1971

On June 16, 1970, we delivered an opinion and judgment in this case setting aside the order of the trial court which punished petitioner F. D. Rich Company of P.R., Inc., to pay intervener Aníbal L. Arsuaga, Inc., the amount of $27,438.62 plus $2,700 for attorney's fees. *F. D. Rich Co.* v. *Superior Court, ante,* p. 155.

At the timely request of the intervener and with the due appearance of petitioner, we have considered again the important questions raised in this case and we are convinced that the reconsideration requested lies.

Although the pertinent facts appear in said opinion, it is convenient to summarize them here for a better understanding of what we decide now.

On July 22, 1968, Aníbal L. Arsuaga, Inc., filed a complaint against Metropolitan Mechanical Constructors, Inc., and National Insurance Co., claiming from the former the amount of $29,920.62 for construction materials, of which amount the latter guaranteed the sum of $18,884.13 by payment bond. Simultaneously with the filing of the complaint, plaintiff requested and obtained the security for the effectiveness of judgment which in due time could be rendered, indicating to the marshal, among other properties, an alleged remnant which in the amount of $65,000 petitioner Rich owed Metropolitan Mechanical Constructors, Inc., on account of a plumbing contract made between them.

On August 2, 1968, the attachment was notified to petitioner for the sum claimed plus $5,000 for attorney's fees over "any right, title and interest which defendant, Metro-

politan Mechanical Constructors, Inc., may have in the amount of $65,000 which you owe to said defendant on that date." Metropolitan Mechanical Constructors, Inc., consented to have the complaint granted and judgment rendered against it binding itself to satisfy the sum of the claim within the term of 10 days as of the stipulation. In accordance with what was stipulated, the trial court rendered judgment on February 28, 1969, subsequently issuing a writ of execution on the amounts owed by F. D. Rich Company of Puerto Rico, Inc., to Metropolitan Mechanical Constructors, Inc., and which previously had been object of attachment.

In view of the writ of execution notified by the marshal, Rich assumed the position that it did not owe anything to Metropolitan, for which reason it did not have to deposit any amount in the court.

On account of the position assumed by Rich, Aníbal L. Arsuaga, Inc., requested, on April 1, 1969, the trial court to summon Rich to show cause why it should not be punished for contempt upon failure to comply with the payment of the attached sums, or in the alternative, why a writ of execution should not be issued against it. The court held a conference prior to the trial, on June 12, 1969, and held the hearing on the merits of the motion to show cause on June 18. The court concluded, on the grounds stipulated at the conference, and on the evidence introduced at the hearing, insofar as pertinent herein, that:

a) the remnant of $65,000 over which the attachment was made was originated on account of the subcontract made in 1966 between Metropolitan Mechanical Constructors, Inc., and F. D. Rich Company of Puerto Rico, Inc., for the amount of $391,649.00,

b) up to August 1968 Rich had satisfied to Metropolitan, under the subcontract, the amount of $334,459.71 a remnant of $57,189.29 being left pending,

c) on August 1, 1968, precisely one day before the attachment requested by Arsuaga, Inc., in the action for recovery of

money against Metropolitan, was performed, Rich notified the surety National Insurance Company, that it considered the subcontract as terminated because of nonperformance on Metropolitan's part,

d) the subcontract was finished subsequently by David Andújar, Inc., which was contracted for those ends by Miguel J. Nolla and John Morris, who were securities of National Insurance Company in the payment bond which the latter issued in favor of Metropolitan,[1]

e) Nolla paid Andújar, Inc., the amount of $42,874.25,

f) the Urban Renewal and Housing Corporation accepted accordingly the termination of the contract, except that it claimed deductions for deficiencies in plumbing amounting to $825 and the amount of $2,126.25 for a smoke test.

In accordance with the foregoing findings, the trial court deducted from the said remnant of $57,189.29 the U.R.H.C. claims amounting to $2,951.25, concluding that Rich owed Metropolitan a net balance of $54,238.04, which amount was subject to the results of the action. The trial court concluded, also, that Rich violated the order of attachment when it did not pay in effect the amount of the attachment to the marshal. Consequently it entered an order directing petitioner F. D. Rich Company of Puerto Rico, Inc., to pay intervener Aníbal L. Arsuaga, Inc., the amount of $27,438.62 plus $2,700 for attorney's fees.

This was the order which we reversed on June 16, 1970, and which we are now reconsidering. The grounds which we alleged for the reversal were to the effect: a) that when Rich considered the subcontract with Metropolitan as terminated on August 1, 1968 as a result of the latter's nonperformance, Rich owed *nothing* to Metropolitan; b) that when the attach-

---

[1] National Insurance Company when it was sued by Arsuaga as Metropolitan's surety, filed in its turn a claim against third parties Miguel Nolla, John Morris, and David S. Castro, Inc., alleging that the latter bound themselves jointly to satisfy it any sum which it would become bound to pay on account of the bonds issued in favor of Metropolitan.

ment was ordered on August 2, 1968, no liquid debt and without contingency of Rich in favor of Metropolitan existed, the remnant of the contract being, on the contrary, subject to claims and readjustments in view of the rights of the "surety"[2] of Metropolitan and of others by virtue of the payments made to Andújar for its termination of the mechanical work, of the U.R.H.C. as owner of the project, and of Arsuaga and other suppliers and creditors of Metropolitan.

The question having been considered again, we do not agree that when Rich considered the subcontract as terminated on account of nonperformance by Metropolitan, it owed the latter nothing as of this moment. Once the work was terminated, as it was, to the satisfaction of the owner, the Urban Renewal and Housing Corporation, the contract between them was subject to an adjustment of accounts, that is, to liquidation. This liquidation was performed at the hearing held by the trial court, which as we have seen, reflected a net remnant in favor of Metropolitan of $54,238.04. The evidence introduced supports amply not only this, but also, the other findings of the court.

It is clear that Rich cannot make this remnant its own. Its contractual rights were limited to demand from Metropolitan and, in its defect, from the former's surety, the termination of the work to the owner's satisfaction at a cost of $391,649. Its act of declaring the contract as terminated on account of Metropolitan's nonperformance did not improve its contractual relation, conferring it, as it claims, any right to the remnant. The work was terminated to the owner's satisfaction, which was all that it could demand, regardless of who performed the termination. For that reason it was bound to the total payment of the contract of Metropolitan.

---

[2] Properly the reference should be not to the surety National Insurance Company but to Nolla and Morris, who as indemnitors of the former were the ones who paid Andújar for the termination of the work.

■ Rich's contention that there were pending claims of other suppliers so as not to pay the total price of the contract to Metropolitan cannot be supported. First, because this contention was never duly supported by the evidence. Second, because although there could have been other claims, none had preference over that of Arsuaga, as the latter, as we know, obtained in its favor an attachment, afterwards a final and unappealable judgment, and finally, a writ of execution. To that effect, § 1824 of the Civil Code, 31 L.P.R.A. § 5194, provides that preference shall be given to credits which without a special privilege appear in a final judgment if they had been the object of litigation. See also, *General Motors Acceptance Corp.* v. *Superior Court*, 85 P.R.R. 314 (1962).

■ Neither did the declaration of nonperformance and the subsequent termination of the work by Nolla and Morris have the effect of conferring the remnant to the latter, unless, of course, Metropolitan would have granted them its rights.[3] The nonperformance only had the effect of putting into effect the subsidiary obligations of National as surety and of Nolla and Morris as indemnitors.[4] The termination of the work by Nolla only gave him a right to a cause of action against Metropolitan for the refund of the sums paid to Andújar for the termination of the work. To that end, § 1737 of the Civil Code, 31 L.P.R.A. § 4911, provides that the surety who pays for the debtor shall be indemnified by the latter. It should be kept in mind, however, that Nolla's right to a refund is subordinated to Arsuaga's preferred right by virtue of said § 1824, as we have previously seen.

―――――――――

[3] Nolla and Morris seem to understand it thus, since, in the complaint they filed against Rich on April 8, 1970, they requested that the remnant be paid directly to Metropolitan with the obligation that the latter would refund them the amount of $42,874.45 which they paid to David Andújar, Inc., for the termination of the work. They also requested that in the alternative it was to be paid directly to them.

[4] National Insurance Company does not claim a right to the remnant since it did not incur any expense for the termination of the work.

## —II—

The notice of the order of attachment, as it will be remembered, was performed over any right, title and interest which Metropolitan could have in the remnant. In other words, over the right—whichever it may be—which Metropolitan might have in the remnant once the contract was liquidated.

■ We were wrong in our opinion of June 16, 1970, in characterizing the order of attachment as one of garnishment improperly applying the technical limitations of this institution—liquid debt, demandable and without contingencies—a provisional measure to secure the effectiveness of judgment rendered under Rule 56 of the Rules of Civil Procedure.

The garnishment proceeding in the United States jurisdictions is of statutory origin. Generally, the courts do not have authority to grant this remedy, in the absence of a statute authorizing it. 6 Am. Jur. 2d § 627, p. 361; 38 C.J.S. *Garnishment* § 1.

It should be said that the rules which govern this remedy are not uniform, varying in each jurisdiction in harmony with the specific terms of the statutes which authorizes it. 7 Moore's Federal Practice 1511; § 64.04 (3). As it is considered as a burdensome remedy, in some jurisdictions it has been held that the terms of the statute are of strict construction. *Cold Metal Process Co.* v. *McLeoth Steel Corp.*, 126 F.2d 185. However, there are jurisdictions where the remedy has been permitted as case history even with uncertain and contingent debts. *McKendall* v. *Patullo*, 160 A. 202 (R.I.).

■ Our Rule 56, on the other hand, does not require that a debt be liquid and without contingencies to be object of an attachment to secure effectiveness of judgment. A prior liquidation of the contract is not necessary in order to perform an attachment over the rights which one party may have over the same in order to secure the effectiveness of the

judgment which in due time may be rendered. See: *Banco Popular* v. *Vázquez*, 97 P.R.R. 155 (1969); *General Motors Acceptance Corp.* v. *Superior Court, supra; Ruiz* v. *Commercial Insurance*, 83 P.R.R. 312 (1961); *Sierra* v. *Vieta*, 56 P.R.R. 214 (1940).

■ Rule 56 of the Rules of Civil Procedure confers upon the court sufficient flexibility to issue the measures which it deems necessary or convenient, according to the circumstances of the case, to secure the effectiveness of the judgments. Its only limitation is that the measure be reasonable and adequate to the essential purpose of the same, which is to guarantee the effectiveness of the judgment which in due time may be rendered. This flexibility, so necessary for the administration of justice, is the greatest virtue of Rule 56, virtue which we should promote and preserve instead of mystifying it with technical concepts and requirements foreign to our procedural system such as that of garnishment.

In setting aside our judgment of June 16, 1970, and affirming, as we do now, the order of the trial court of December 19, 1969, ordering F. D. Rich of Puerto Rico, Inc., to pay the plaintiff Aníbal L. Arsuaga, Inc., the amount of $27,438.62 plus $2,700 for attorney's fees, we are not doing anything else but recognizing and ratifying the case law established by this Court in the previously cited cases of *Banco Popular* v. *Vázquez; General Motors Acceptance Corp.* v. *Superior Court; Ruiz* v. *Commercial Insurance*, and *Sierra* v. *Vieta, supra.*

The case will be remanded to the trial court for further proceedings not inconsistent with what has been set forth above.

Mr. Justice Ramírez Bages dissented in a separate opinion.

—O—

Mr. Justice Ramírez Bages, dissenting.

San Juan, Puerto Rico, February 22, 1971

I agree that Rule No. 56 of the Rules of Civil Procedure is elastic, and is not subject to the limitations and technical requirements of the statutory remedy of garnishment prevailing in the United States.

However, I dissent from the outcome which the majority opinion has reached for the reasons which I state hereinafter.

1.—When Metropolitan Constructors, Inc. (hereinafter called Metropolitan) incurred the nonperformance of its subcontract with principal contractor F. D. Rich of P.R., Inc. (hereinafter called Rich) on account of which the latter considered said contract as terminated without Metropolitan objecting thereto, the following situation prevailed:

(a) Metropolitan had not finished the subcontracted work.

(b) Metropolitan and Rich stipulated that the amount of $57,189.29 withheld by Rich under the subcontract with Metropolitan *was not for work done*. In other words, the amount paid by Rich to Metropolitan up to the date when the contract was deemed as terminated constituted the total payment of the work which Metropolitan had performed under said subcontract. As a result of this we should infer that all the materials supplied by Aníbal L. Arsuaga, Inc. (hereinafter called Arsuaga) to Metropolitan were used in the work performed up to that moment by Metropolitan or in the part not used in said work, stored by the latter.

2.—Metropolitan's surety having been requested to finish the work, and the former having requested its indemnitors to do so, they contracted Andújar who finished it to satisfaction for which it was paid the amount of $42,874.25.

As there is no evidence to the contrary, we should infer that no material supplied by Arsuaga was used in the termination thereof.

Now, Metropolitan has no right or title whatsoever to the amount withheld by Rich when its subcontract was terminated on account of its nonperformance. At most, perhaps it may be concluded that it should receive any remnant of said withheld amount after the cost of the termination of the subcontract by Andújar and the claims *of the U.R.H.C.* as owner of the works are paid to the indemnitors of the surety.

As Arsuaga, in his capacity as materialman of Metropolitan cannot claim, insofar as the amount withheld is concerned, a greater right than the one which Metropolitan had over the same, it seems obvious to us that its judgment against Metropolitan can only be satisfied from, and the attachment in execution of the same can only be effective over, that part of the withheld sum which at law belongs to and is payable to Metropolitan, the amount refundable for the cost of terminating said subcontract not being so far the indicated reason.