BONNI SEIDMON, n/k/a Bonnie Kolb, Plaintiff-Appellant and Adverse Claim Defendant-Appellant, v. MARK HARRIS, Defendant (Goldberg Brothers, Inc., Garnishee; Mark Harris *et al.*, Adverse Claim Plaintiffs-Appellees).

First District (4th Division) No. 87—2744

Opinion filed June 30, 1988.

Erwin Cohn & Associates, of Chicago (Charles A. Cohn and Erwin Cohn, of counsel), for appellant.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Howard A. London, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Bonni Seidmon, now known as Bonnie Kolb, received a judgment from the circuit court of Cook County against defendant, Mark Harris. The trial court subsequently entered a garnishment judgment for Kolb against the garnishee, Goldberg Brothers, Inc. Adverse claim plaintiffs, Harris and B.I.T. Enterprises, Inc., filed an adverse claim seeking the garnishment fund. B.I.T. claimed that a partnership existed between it and Harris. B.I.T. argued that the partnership owned the garnishment fund and not Harris.

Following a bench trial on the adverse claim, the trial court vacated its garnishment judgment for Kolb and entered judgment for B.I.T. Kolb appeals, contending that the trial court's findings and judgment were against the manifest weight of the evidence.

We reverse the judgment of the trial court and remand with directions.

BACKGROUND

The record shows that on January 17, 1985, the trial court entered judgment for Kolb and against Harris. The court awarded Kolb $24,050 plus costs. On April 25, 1985, Goldberg Brothers was served with a garnishment summons. Goldberg Brothers answered that it held a commodities trading account that Harris owned or therein had an interest.

On September 18, 1985, the trial court granted B.I.T. leave to intervene and file an adverse claim. (Ill. Rev. Stat. 1985, ch. 110, par. 12–710.) B.I.T. claimed that a partnership existed between it and Harris. B.I.T. alleged that the partnership owned the money in the commodities trading account and not Harris. On October 21, 1985, the trial court dismissed B.I.T.'s adverse claim with prejudice. The court also entered judgment in favor of Harris for the use and benefit of Kolb. The court awarded Kolb the amount of the original judgment, costs, and interest, which totalled $25,069.93.

Two days later, however, B.I.T. filed a second adverse claim, this time invoking the court's general equity powers. (Ill. Rev. Stat. 1985, ch. 110, par. 12–718.) B.I.T. repeated its claim that the partnership, and not Harris, owned the money in the commodities trading account. After the trial court denied her motion to dismiss, Kolb answered B.I.T.'s adverse claim. Some discovery occurred. On May 20, 1987, the trial court denied Kolb's motion for summary judgment. On July 27, 1987, the court denied B.I.T.'s motion for summary judgment.

On July 28, 1987, a bench trial was held on the adverse claim. B.I.T.'s evidence is summarized as follows. In December of 1984, Harris and B.I.T.'s president, William Terman, discussed the formation of a trading venture. Terman presented Harris with a standard partnership agreement, which Harris read. Terman and Harris then discussed the document and agreed to its terms. They agreed that B.I.T. would provide the partnership's initial capital contribution of $26,000. They also agreed to divide partnership profits according to the allocations contained in the document. Additionally, Harris would receive a monthly draw, deducted from his share of future profits.

Harris and B.I.T. did not sign this partnership agreement. Terman testified that they did not sign the agreement because: (1) they trusted each other, and (2) it is standard practice in the commodities industry to base such partnerships on a handshake.

Harris and Terman next went to Goldberg Brothers, a clearing

house, to establish a partnership trading account. B.I.T. presented evidence that its name could not be listed on the account for various reasons. As a result, they established the trading account in Harris' name alone. On February 12, 1985, B.I.T. issued a check in the amount of $26,000, made payable to Harris. He endorsed the check for deposit in the new account. Harris began trading for the partnership that day or the next, and continued through August 1985. B.I.T.'s check ledger listed Harris as a partner.

Kolb claimed that on April 25, 1985, no partnership existed between B.I.T. and Harris. Some of Kolb's evidence is summarized as follows. On the same day that he received B.I.T.'s $26,000 check, Harris signed a promissory note for that amount plus interest, payable to B.I.T. on demand. Additionally, Harris and B.I.T. prepared no documentation indicating a partnership between himself and B.I.T.

On August 5, 1987, the trial court vacated its garnishment judgment for Kolb, and entered judgment for B.I.T. on the adverse claim. The court observed that B.I.T. and Harris conducted their business carelessly. The court found, however, that on April 25, 1985, a partnership existed between it and Harris. Since the money in the trading account belonged to the partnership and not to Harris, then Kolb could not garnish it. Kolb appeals.

OPINION

■ The purpose of garnishment is to make the assets of a judgment debtor available for satisfaction of adjudicated claims, and to reach property belonging to a judgment debtor, where he possesses no property liable to execution. (*Harris v. Valen Construction Co.* (1964), 49 Ill. App. 2d 265, 267, 200 N.E.2d 70, 71.) A judgment creditor can assert against a garnishee only those claims that the judgment debtor could have maintained. (*Baron v. Villareal* (1968), 100 Ill. App. 2d 366, 373, 241 N.E.2d 227, 230.) The right of a judgment creditor against a garnishee cannot, *via* garnishment, rise higher than the right of the judgment debtor against the garnishee. *Harris*, 49 Ill. App. 2d at 267, 200 N.E.2d at 71.

■ A garnishment proceeding is not a distinct and separate action, but rather is an ancillary or additional step in the original action for judgment. It is remedial in nature, designed to reach property belonging to the judgment debtor only after ordinary execution has failed. (*Baron*, 100 Ill. App. 2d at 373, 241 N.E.2d at 230.) Garnishment was unknown at common law; it rests wholly upon statute. 100 Ill. App. 2d at 371, 241 N.E.2d at 229; *Harris*, 49 Ill. App. 2d at 267, 200 N.E.2d at 71.

The garnishment act, now codified in our Code of Civil Procedure, applies only to property that the garnishee possesses or controls, which belongs to the judgment debtor or in which the judgment debtor has an interest, including debts due or to become due to him, "as of the date of service of the garnishment summons." Ill. Rev. Stat. 1985, ch. 110, par. 12—707(b).

As a result of these principles, the dispositive issue in this case is whether a partnership existed between B.I.T. and Harris as of April 25, 1985. This is the date on which Goldberg Brothers received the garnishment summons. If the partnership existed as of that date, then the money in the trading account belonged to the partnership and not Harris. Since Harris had no right to the money, Kolb likewise cannot gain the right to it *via* garnishment. Conversely, if the partnership did not exist as of that date, then the money in the trading account belonged to Harris. Since Harris had a right to the money, Kolb likewise can gain the right to it *via* garnishment.

■ The requisites of a partnership are that the parties must have joined together to carry on a trade or venture for their common benefit, each contributing property or services, and having a community of interest in the profits. As between the parties, the existence of a partnership is a question of intent, based on all of the facts and circumstances. *Rizzo v. Rizzo* (1954), 3 Ill. 2d 291, 299, 120 N.E.2d 546, 551; *Olson v. Olson* (1965), 66 Ill. App. 2d 227, 233, 213 N.E.2d 95, 97-98.

■ To create a partnership, a written agreement is not necessary. A partnership may exist under a verbal agreement; the surrounding circumstances may be sufficient to establish such an agreement. The following factors are material in determining the existence of a partnership: the manner in which the parties have dealt with each other; the mode in which each has, with the knowledge of the other, dealt with persons in a partnership capacity; whether the alleged partnership has advertised using the firm name; and whether the alleged partners shared the profits. *Rizzo*, 3 Ill. 2d at 299-300, 120 N.E.2d at 551; *Olson*, 66 Ill. App. 2d at 233, 213 N.E.2d at 97-98.

■ The burden of proving the existence of a partnership rests on the party asserting it. (*Krebs v. Mini* (1977), 53 Ill. App. 3d 787, 793, 368 N.E.2d 159, 164.) The burden of proof normally is a preponderance of the evidence. (*Smith v. Knight* (1873), 71 Ill. 148, 151-52.) However, where the evidence contains writings of the parties that distinctly indicate a relationship other than a partnership, the assertion that a partnership exists must be based on very clear and convincing evidence. *Baker v. Baker* (1911), 161 Ill. App. 430, 437.

■ Applying these principles to the instant case, we conclude that B.I.T. failed to carry its burden of proving the existence of the partnership between it and Harris. B.I.T. filed the adverse claim, asserting the existence of the partnership; therefore, it carried the burden of proof. Also, the record included Harris' promissory note for the $26,000 plus interest, payable to B.I.T. on demand. This writing indicates a debtor-creditor relationship rather than a partnership. Therefore, B.I.T. had the burden of proving, by clear and convincing evidence, that the partnership existed.

■ Courts have defined "clear and convincing" evidence most often as the quantum of proof that leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question. Although stated in terms of reasonable doubt, courts consider clear and convincing evidence to be more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense. The spectrum of increasing degrees of proof, from preponderance of the evidence, to clear and convincing evidence, to evidence beyond a reasonable doubt, would be clearer if the degrees of proof were defined, respectively, as probably true, highly probably true, and almost certainly true. *In re Estate of Ragen* (1979), 79 Ill. App. 3d 8, 14, 398 N.E.2d 198, 203.

■ The trial judge described the evidence of the partnership between B.I.T. and Harris as "way over even clear and convincing evidence, let alone a preponderance." We disagree. After carefully reviewing the entire record, we cannot say that the existence of the partnership is highly probably true, or even probably true. Rather, the record is replete with evidence that no partnership existed.

In her brief, Kolb summarized the evidence against the existence of the partnership between B.I.T. and Harris. They did not sign a written partnership agreement. B.I.T.'s $26,000 check was payable to Harris, rather than to the partnership. Harris issued a $26,000 promissory note, plus interest, payable to B.I.T. on demand. The trading account was in Harris' name alone. Checks had to be drawn in Harris' name. Harris leased his seat on the Chicago Board of Trade from Terman rather than the partnership. Under the lease, Harris paid rent to Terman rather than to the partnership. Additionally, no document was ever filed, with the Board of Trade or anyone else, declaring the existence of the partnership between B.I.T. and Harris. No tax return was ever filed for the partnership. B.I.T. presented no evidence that the partnership ever did business under a partnership name.

B.I.T. and Harris did not sign a written partnership agreement until the day after B.I.T. learned of the garnishment proceeding. The

trading account was originally in Harris' name alone; Terman's name was added after notice of the garnishment. Indeed, the trial court noted these post-garnishment maneuvers with disapproval.

 The evidence in the case at bar precludes a finding that the partnership existed. True, B.I.T. did offer evidence, which we summarized earlier, that the partnership existed. Testimony on behalf of B.I.T. attempted to explain away Kolb's evidence. B.I.T.'s evidence, however, is simply insufficient to support the trial court's findings and judgment. Where a judgment is completely unjustified by the evidence and against the manifest weight of the evidence, it is the right and duty of a reviewing court to set the judgment aside. (*Royal Ornamental Iron, Inc. v. Devon Bank* (1975), 32 Ill. App. 3d 101, 109-10, 336 N.E.2d 105, 112.) We conclude that B.I.T. failed to carry its burden of proving the existence of the partnership between it and Harris. Consequently, we hold that the trial court's judgment for B.I.T. on the adverse claim was against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County in favor of B.I.T. on its adverse claim is reversed, and the cause remanded with directions that the trial court reinstate its October 21, 1985, garnishment judgment for Kolb.

Reversed and remanded with directions.

JOHNSON and McMORROW, JJ., concur.